UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Latasha Lorraine Askins, | ) | C/A No. 4:12-1856-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | |
| | ) | |
| John Belissary; New Generations Home | ) | |
| Care, LLC; Ann Belissary; and Lynn Ford, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Latasha Lorraine Askins ("Plaintiff" or "Askins") filed this action pro se in the United States District Court, Florence Division, on July 5, 2012, seeking recovery against her former employer, New Generations Home Care, LLC ("NGHC"); NGHC Administrator John Belissary ("J. Belissary"); NGHC Office Manager Ann Belissary ("A. Belissary"); and NGHC Human Resources ("H.R.") Director, Lynn Ford (collectively, "Defendants"). In her pro se Complaint, Plaintiff claims she was "wrongly discharged and retaliated against" by Defendants and that her civil rights have been violated." Compl. 3-4, ECF No. 1. The court construes her Complaint as bringing a cause of action for retaliation pursuant to Title VII, 42 U.S.C. § 2000e. This matter comes before the court on Defendants' Motion for Summary Judgment, ECF No. 51, to which Plaintiff filed a response, ECF No. 57. Having considered those briefs, as well as Defendants' Reply, ECF No. 58, undersigned submits this Report[1] recommending Defendants' Motion be granted and the case be dismissed with prejudice in its entirety.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(g), D.S.C. Because the Motion for Summary Judgment is dispositive, this Report and Recommendation is entered for the district judge's consideration.

I.     Factual Background[2]

NGHC is a home care agency in Florence, South Carolina offering different levels of in-home services to the elderly and infirmed. A. Belissary Aff. ¶ 3, ECF No. 51-1. NGHC's managers include Defendants J. Belissary (Administrator), A. Belissary (Office Manager), and Ford (H.R. Director). Plaintiff was employed as a Personal Care Aide with NGHC from September 19, 2006 through January 26, 2010. *See* Pl.'s Resp. 1, ECF No. 57; Defs.' Mem. 3, ECF No. 51. When NGHC's H.R. Director hired Plaintiff as a Personal Care Aide I, Plaintiff signed a copy of a Personal Care Aide I job description, which included details regarding the job's duties and qualifications. Job Description, ECF No. 51-3. These job duties included meal preparation, housekeeping, and errand assistance. *See id.* at 1. Also on September 19, 2006, Plaintiff signed a "Terms of Employment" document, in which she represented that she "underst[ood] and accept[ed]" the following, *inter alia*: NGHC could not guarantee her "any specific permanent number of hours or clients[;]" her work hours were as-needed, not guaranteed; and she was required to submit any request for increased or decreased work hours in writing. NGHC Terms of Employment, ECF No. 51-4.[3]

As Office Manager A. Belissary explains, NGHC's personal care aides are not guaranteed employment or work hours because, by the nature of NGHC's business, clients may be lost to death, long-term nursing home placement, competitors, and reduced referrals from NGHC's exclusive referral sources. A. Belissary Aff. ¶ 4. A. Belissary notes NGHC cannot solicit clients; rather, two South

---

[2] In considering Defendants' Motion, the court has reviewed the facts as set forth in that Motion and its accompanying affidavits and exhibits, ECF No. 51, as well as the facts set forth in Plaintiff's Complaint, ECF No. 1, and her Response to Defendants' Motion and its accompanying exhibits, ECF No. 57. The court sets out facts herein that provide background and those that potentially are relevant to Plaintiff's claims and Defendants' defenses. Plaintiff, proceeding pro se, has not submitted any affidavits setting out facts, so her facts are not verified in the record.

[3] When questioned about the Terms of Employment document at her deposition, Plaintiff acknowledged having signed it and acknowledged the terms; however, she indicated she "didn't really agree" to the terms, but signed the paperwork "to get a job." Pl.'s Dep. 42-44, 48; ECF No. 51-21.

Carolina agencies—the South Carolina Department of Health and Human Services ("SCHHS") and the South Carolina Department of Disabilities and Special Needs ("SCDSN")—include NGHC on a list of agencies from which potential clients can choose. *Id.* An employee's work hours also may be reduced when either the client or the employee requests to end services in a specific client's home. *Id.* ¶ 6. A. Belissary states that NGHC honors all requests that one of their care-givers (such as Plaintiff) no longer work with a particular client[4]—whether such removal requests are made by the employee or by the client—because, in NGHC's business judgment, not to do so could put the client's and/or the employee's safety and NGHC's business reputation at risk. *Id.* According to A. Belissary, NGHC makes reasonable efforts to replace an employee's hours that are lost because of a removal request; however, it does not guarantee an employee a specific number of hours. *Id.*

On November 10, 2006, Plaintiff submitted a handwritten note in which she requested removal from a particular client's home because she was afraid of the client's puppy and the client requested Plaintiff perform housekeeping duties she did not believe she should be required to perform. *See* Nov. 10, 2006 Note, ECF No. 51-5.

According to Defendants, one of NGHC clients requested that Plaintiff be removed from his home. Defendant Ford documented this request. Handwritten Note, ECF No. 51-6. Plaintiff does not agree that such a request was made, noting the note was not made in the client's handwriting and indicating she believed the note to be a forgery. Pl.'s Dep. 56-58; ECF No. 51-21.

---

[4] Because Plaintiff alleges Defendants retaliated against her after two occasions on which she requested to be removed from working at the home of particular clients, Defendants' Motion includes discussion of how NGHC handles such requests and of various removal-requests made by Plaintiff. In her response, Plaintiff submits information regarding prior clients other than those she discusses is "irrelevant to this case" because she "is not seeking relief or damages for issues to any other clients." Pl.'s Resp. 3, ECF No. 57. Because Plaintiff's case concerns her employment with NGHC, the court appropriately takes note of other information regarding the employment relationship. Nonetheless, even without considering information regarding other clients, the undersigned's recommendation remains the same.

On December 7, 2006, Plaintiff submitted a written request to be removed from a particular client assignment because Plaintiff had traveled to the client's home twice when the client was not at home. Handwritten Note, ECF No. 51-7. Plaintiff indicated the client needed to communicate with NGHC so the client could receive services. Plaintiff indicated she was unhappy about having "wast[ed] [her] time and gas for nothing." *Id.*

On November 13, 2008, Plaintiff submitted a handwritten request to be removed from an assignment caring for another client. Handwritten Note, ECF No. 51-8. Plaintiff indicated that the client had tried to lock her out of the client's apartment "numerous times" when Plaintiff would not do what the client requested that she do. *Id.*

In July 2009, Plaintiff requested removal from the home of a client, "C.P." Plaintiff indicates that she first complained to Defendant Ford about that placement on July 24, 2009. Pl.'s Mem. 1, ECF No. 57. Plaintiff claimed that she was being sexually harassed by C.P.'s sister, who was C.P.'s "main care giver and legal guardian," and that she was "subject to a hostile work environment." *Id.* Plaintiff does not indicate whether the July 24, 2009 request was made orally or in writing. According to Plaintiff, Defendant Ford told her at that time that "the client's sister had nothing to do with the client," and she told Plaintiff "to continue working with the client or be fired." *Id.*

Citing the date of the document as July 30, 2009,[5] Defendants provide Plaintiff's handwritten request that details her issues with client C.P.'s sister. Handwritten Note, ECF No. 51-10. In her written request that she be removed from her assignment of working with C.P., Plaintiff alleged the client's sister, whom Plaintiff indicated was a lesbian, had been flirting with and harassing Plaintiff since the beginning of June (presumably June 2009). *Id.* Plaintiff indicated the client's sister constantly watched

---

[5] Plaintiff characterizes the July 30, 2009 report as "another report" she filed with NGHC. Pl.'s Mem. 1. Whether Plaintiff initially reported her concern about C.P.'s sister on July 24 or on July 30, 2009 is not material to the court's recommendation herein.

and followed her, had bumped her breasts against Plaintiff's elbow, walked around the home "half naked," and "had an orgasm while staring at [Plaintiff.]" *Id.* Plaintiff also indicates the sister attempted to get Plaintiff fired. *Id.* Plaintiff concludes the written request by noting she has "the right to work in appropriate conditions" and alleges "she [presumably the client's sister] has created a[] hostile environment for [Plaintiff] to work in." *Id.* NGHC immediately removed Plaintiff C.P.'s home.  A. Belissary Aff. ¶ 8, ECF No. 51-1.

On July 30, 2009, Plaintiff also filed a report about C.P.'s sister with the Florence County Sheriff's Office. Pl.'s Mem. 1; *see* Rpt., ECF No. 51-11. In the Sheriff's Office Report, the officer who responded to Plaintiff's call at her home indicated Plaintiff told him she believed a police report was necessary. *Id.* Plaintiff explained that she worked for a caregiver service and that the individual about whom she was complaining (the client's sister) would openly flirt with Plaintiff and "constantly talk[ed] about her lesbian-gay lifestyle." *Id.* Plaintiff indicated she had told the sister to stop and had asked her employer to "reassign this client." *Id.*

Not pleased with the low priority given to her complaint by the Sheriff's Office, Plaintiff called the Sheriff's Office and asked that an officer be sent back to see her. Pl.'s Dep. 91, ECF No. 51-21. Plaintiff got "fed up" so she went to the Sheriff's Office on August 6, 2009, and provided an update to her prior report. *Id.* In her amendment to the incident report, Plaintiff recounts her specific complaints about the client's sister. Supplemental Report, ECF No. 51-12.

NGHC suspended Plaintiff from work for two days—August 17-18, 2009. *See* Pl.'s Mem. 1-2, ECF No. 57; A. Belissary Aff. ¶ 11, ECF No. 51-1. Plaintiff submits she was suspended in retaliation for her filing reports with the Florence County Sheriff's Office regarding C.P.'s sister. Compl. 3, Pl.'s Mem. 1-2.

NGHC submits Plaintiff's two-day suspension was unrelated to Plaintiff's reporting anything to the Sheriff's Office. A. Belissary Aff. ¶ 10. Rather, Defendants explain Plaintiff was suspended after A. Belissary received a telephone call from one of C.P.'s family members who stated Plaintiff had been calling C.P.'s residence and threatening that C.P.'s sister would be arrested. C.P.'s family member asked A. Belissary to instruct Plaintiff to stop calling C.P.'s home. *Id.* ¶ 11. NGHC felt Plaintiff had acted unprofessionally when she continued contact with a client or a member of a client's family after having been removed from caring for that client. *Id.* ¶ 12. Defendants indicate Plaintiff's actions prompted NGHC to issue a directive to all in-home aides that they are not to communicate with clients or family members after having been removed from working at that client's home for any reason. *Id.*; Mem. to NGHC Aides, ECF No. 51-14.

Plaintiff also avers that, although NGHC permitted her to return to work after the two-day suspension, NGHC took away her client A.K. "as another form of punishment." Pl.'s Mem. 2; *see also* Compl. 3 (claiming A. Belissary removed a client not related to C.P. or his sister "as another form of retaliation against [her] for filing a sexual harassment complaint and police report"). NGHC indicates client A.K. was removed from Plaintiff's care at the request of A.K.'s daughter. A. Belissary Aff. ¶ 9. Defendants submit a portion of the pre-suit Equal Employment Opportunity Commission ("EEOC") investigation file that contains interview notes from A.K.'s daughter who confirms Plaintiff lost client A.K. because, A.K.'s daughter felt Plaintiff and A.K. were not a "good match" and a change was made in the best interests of A.K. EEOC Interview Notes, ECF No. 51-13.

Plaintiff submitted a written Charge of Discrimination with the South Carolina Human Affairs Commission ("SHAC") and EEOC on November 12, 2009. Charge of Discrimination, ECF No. 51-15. Plaintiff explained that, on July 24, 2009, she complained to her employer's H.R. Director, Ford, that she was being "sexually harassed by a client's sister" and that she was "subject to a hostile working

environment." *Id.* Plaintiff stated that said Ford told her the sister had nothing to do with the client and that if she quit working for that client she would be terminated. *Id.* She alleged her employer retaliated against her between August 17 and 20, 2009, when her office manager, A. Belissary, suspended her for having pressed charges against the client's sister. *Id.* Plaintiff also noted her employer removed a client from Plaintiff's care and that her scheduled working hours had been reduced significantly. *Id.* Plaintiff indicated her employer had provided no reason for such actions, and she indicated she believed she had "been retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*

On January 26, 2010, Plaintiff requested removal from the only client to whom she was assigned, G.G. Handwritten Removal Request, ECF No. 51-16. She stated that G.G.'s son entered a bedroom where she was working, closed the door, and kept it shut for five minutes. Plaintiff indicated this terrified her. *Id.* The client's sister opened the bedroom door, allowing Plaintiff to leave the room. Plaintiff indicated that G.G.'s son had "a habit of being in [her] face and following [her] around [G.G.'s] house[.]" *Id.* A. Belissary states that NGHC removed Plaintiff pending investigation. A. Belissary Aff. ¶ 13. NGHC's investigation concluded that the son was a 70-year-old gentlemen who talked to Plaintiff with his hands in his pockets and with the door open at all times. *Id.* Plaintiff did not have any remaining clients and NGHC did not have alternative assignments for Plaintiff. *Id.* ¶ 14.

Plaintiff disagrees with Defendants' assessment, claiming NGHC was "well aware" of the inappropriate behaviors of G.G.'s son. Pl.'s Br. 3, ECF No. 57. She indicates she had given a "written sexual harassment report on [G.G.'s son] before touching the plaintiff's buttocks and lower back, which always caused his hand to hit [Plaintiff's] butt again." *Id.* She states that NGHC took the report, but

"refused to sign it and give a copy of the report back [to Plaintiff]." *Id.* Plaintiff claims NGHC told her the son had nothing to do with the client and refused to remove her from G.G.'s home. *Id.*[6]

Plaintiff made a report to the Florence County Sheriff's Office on February 1, 2010, regarding a claimed "kidnapping" by the son of her home-health-care client (G.G.). Sheriff's Office Rpt., ECF No. 57-1 at 5.

The EEOC issued Plaintiff a right-to-sue letter on June 8, 2012. ECF No. 1-1. Plaintiff filed suit July 5, 2012. ECF No. 1.

II.    Discussion

A.  Standard of Review

The court must liberally construe pleadings filed by pro se litigants. *Cruz v. Beto*, 405 U.S. 319, (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction of a pro se plaintiff's complaint does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact when none exists. *See* Fed. R. Civ. P. 56(c).The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[6] Although not clear, it appears that Plaintiff is stating NGHC refused to remove her from caring for G.G. after the prior report she allegedly gave regarding the behavior of G.G.'s son.

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).  In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the

plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B.     Analysis

1.   Title VII Retaliation

Plaintiff raises a claim of retaliation pursuant to Title VII. A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Absent direct evidence proof of retaliation, in order to establish a prima facie case for retaliation under Title VII, a plaintiff must show the following: "(1) []he engaged in a protected activity; (2) the employer took an adverse employment action against [him]; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271

(4th Cir. 2011) (internal quotation omitted).  Recently, the United States Supreme Court clarified that, in the Title VII retaliation context, a plaintiff must prove retaliation was the but-for cause of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). In other words, the successful plaintiff in a Title VII retaliation suit must show that the complained-of injury would not have occurred "but for" the alleged retaliatory motive. *Id.; see also id.* at 2524-25. In so holding, the Court rejected the argument that a Title VII retaliation claimant had to establish the lessened "motivating-factor" causation standard applicable to some status-based Title VII causes of action. *See* 133 S. Ct. at 2533-34. *See also Maliik v. Sebelius*, __ F. Supp. 2d __, No. PWG-12-1725, 2013 WL 4559516, at *16 (D. Md. Aug. 28, 2013) (discussing *Nassar* and explaining the but-for causation standard "means that the employer would not have taken the adverse employment action against the plaintiff if the employer were not trying to retaliate against the plaintiff for engaging in a protected activity.").

If Plaintiff is able to establish a prima facie case for retaliation, Defendant can rebut the presumption by articulating a legitimate non-retaliatory reason for its action. Discussing a defendant's burden, the court has explained: "What shifts is merely a burden of producing admissible evidence (something more than a pleading) that would, if believed, be legally sufficient to justify a judgment for the defendant." *Taylor v. Ingles Markets*, C.A. No. 802407227, 2004 WL 3591133, *5 (D.S.C. Dec. 13, 2004) (citing *Burdine*, 450 U.S. at 255). The employer, however, does not have the burden of persuading the court that it was actually motivated by the proffered reason. *Id.* "The employer's burden is satisfied if he simply 'explains what he had done' or 'produce[es] evidence of legitimate, nondiscriminatory reasons.'" *Williams v. Sonoco Prods. Co.*, C.A. No. 81-1469-0, 1982 WL 423, at *3 (D.S.C. Nov. 8, 1982) (citing *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 25 (1978)).  A plaintiff bears the final burden of proving that the reason given by a defendant is a pretext for unlawful retaliation. *Reeves*,

530 U.S. 133.   In *Reeves*, the Supreme Court clarified a plaintiff's burden to show pretext once the employer articulates a legitimate reason for its adverse action. The Court held that a plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence. *Reeves*, 530 U.S. at 143.   "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Reeves*, 50 U.S. at 146 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)). "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.

Plaintiff has not offered any direct evidence of retaliation, so the court considers her Title VII retaliation claim under the burden-shifting framework as detailed above. Plaintiff submits Defendants retaliated against her twice: once related to client C.P.'s family member and the other concerning client G.G.'s family member. The court considers these claims separately.

a)   Client C.P.

Plaintiff claims NGHC retaliated against her in the form of reduced hours and a two-day suspension for making an internal and external complaint about a client's sister. Compl. 3, ECF No. 1. Plaintiff avers she complained to NGHC orally and in writing concerning an incident in which the sister allegedly sexually harassed her. *Id.* Plaintiff claims she was retaliated against for filing an internal complaint about that client assignment, which she terms a "sexual harassment complaint," as well as a police report. *Id. See* ECF No. 51-10 (Plaintiff's handwritten complaint, asking NGHC to remove her from her assignment of caring for client C.P. because of the behavior of C.P.'s sister toward her); ECF

No. 51-11 (Florence County Sheriff's Office Report of complaint by Plaintiff regarding actions by sister of Plaintiff's client that made her uncomfortable).

Defendants argue Plaintiff cannot establish a prima facie case of retaliation because the internal complaint and the police report do not qualify as "protected activities" pursuant to Title VII. Defs.' Mem. 12-14. They submit Plaintiff did not have a "reasonable belief" that her employer was violating Title VII. *See Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006). Defendants note that Plaintiff's internal complaint was about behavior of a third party, not about her employer.

In response, Plaintiff argues that she did engage in a protected activity by reporting sexual discrimination by those in clients' homes—homes to which she was sent by her employer, NGHC. Pl.'s Mem. 5. Plaintiff argues NGHC violated her civil rights by doing the following:

> wrongfully discharging and suspending [P]laintiff, taking clients away from [P]laintiff, and firing [P]laintiff for initiating a police investigation, filing sexual harassment complaints against past client's family members, and refusing to continue working in hostile and dangerous environments, all of which are unlawful employment practices according to Title VII of the Civil Rights Act.

*Id.*

A plaintiff has engaged in protected activity if "he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)). "Protected activities fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing

under Title VII—are those "essential to the machinery set up by Title VII." 149 F.3d at 259 & n.4 (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)) (internal quotation marks omitted) (citing 42 U.S.C. § 2000e–3(a)). Although Title VII does not protect general complaints of unfair treatment, *McNair v. Computer Data Systems, Inc.*, 172 F.3d 863, at *5 (4th Cir. 1999) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995)), "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).

Plaintiff submits that her internal complaint to her employer about alleged sexual harassment by the sister of Client C.P. and her providing a report to the Florence County Sheriff's Office resulted in her being wrongfully terminated in violation of Title VII. *See* Compl. 3 (characterizing actions as retaliation for "filing a sexual harassment complaint and police report"); Pl.'s Mem. 5. Review of the documents Plaintiff submitted internally and her report to the Sheriff's Office indicate Plaintiff was raising a "sexual harassment complaint" against the sister of C.P., not against NGHC or other Defendants. *See* Internal Removal Req., ECF No. 51-10 (Plaintiff's asking to be removed from C.P.'s home because of "harassment" by C.P.'s sister); Suppl. to Sheriff's Office Rpt., ECF No. 51-12) ("[Plaintiff] would like to file sexual harassment charges and sexual assault charges against [sister of C.P.].").[7] Based on this alone, it appears Plaintiff believed a third party, not her employer, was acting improperly and sexually harassing and assaulting her. The undersigned is of the opinion that Plaintiff's reporting to NGHC and to the Sheriff's Office do not rise to the level of participating in a protected activity. An employee such as Plaintiff must have an "objectively reasonable" belief that she was reporting activity that violated Title VII or similar laws. *See Jordan*, 458 F.3d at 340-41. Based on Plaintiff's own words in her written

---

[7] In her Removal Request, Plaintiff also submits the presence of C.P.'s sister in his home creates a "hostile environment" in her workplace. ECF No. 51-10. As requested, NGHC promptly removed Plaintiff from working in C.P.'s home.

request/reports, she does not pin the allegedly harassing activity on Defendants. Rather, Plaintiff submits Defendants retaliated against her for making these reports. This is insufficient. Without an "objectively reasonable" belief that her employer was violating Title VII or other employment-related civil rights legislation, she cannot establish a prima facie case of retaliation. *Id.* ("[A]n employee seeking protection from retaliation must have an objectively reasonable belief that in light of all the circumstances that a Title VII violation has happened or is in progress.") It is recommended that this portion of Plaintiff's retaliation claim be dismissed as a matter of law.

Even if the court gives Plaintiff the benefit of the doubt and considers Plaintiff's reports regarding alleged behavior by C.P.'s sister as a "protected activity" for purposes of a Title VII retaliation claim, Plaintiff's retaliation claim as to Client C.P. should fail as a matter of law. To establish a prima facie claim of retaliation, Plaintiff must also establish that NGHC took an adverse employment action against her and that NGHC's retaliating against Plaintiff was the "but-for cause" of that adverse employment action. *See Nassar*, 133 S. Ct. at 2533. For purposes of this alternative analysis, the court will assume without deciding that Plaintiff suffered the requisite "adverse employment action" based on two-day suspension and her reduction in hours. Even so, Plaintiff cannot establish that these adverse actions would not have taken place "but for" NGHC's desire to "retaliate" against Plaintiff.

Regarding the two-day suspension, NGHC explains Plaintiff was suspended not for lodging a complaint against C.P.'s sister, but for contacting C.P.'s family members after NGHC honored Plaintiff's request to remove her from being assigned to work for C.P.  A. Belissary explained that NGHC was aware Plaintiff had made a report to the Sheriff's Office regarding C.P.'s sister, but did not impose the two-day suspension on Plaintiff until C.P.'s family member contacted A. Belissary to tell her Plaintiff had been calling C.P.'s residence and threatening that she was having C.P.'s sister arrested. A. Belissary Aff. ¶¶ 10-12. Further, A. Belissary explains that, subsequently, NGHC established a policy

against caregivers' making post-removal contact with clients or family members of clients. *Id.* ¶ 12; *see* Mem. to NGHC Aides, ECF No. 51-15. In NGHC's business judgment, it was unprofessional of Plaintiff to engage in continued contact with a client and/or client's family after removal from the home. A. Belissary Aff. ¶ 12.

In response, Plaintiff argues NGHC's claim that Plaintiff threatened C.P.'s family by telephone is "totally fabricated" because "no police report has been filed with any police department and there aren't any telephone recordings or tapings to prove [Defendants'] claim." Pl.'s Mem. 2. Plaintiff opines it would be "highly unlikely that a police report would not have been filed against" Plaintiff had she attempted to have C.P.'s sister arrested. *Id.* Plaintiff also submits threatening a client would be grounds for termination, and she was not immediately terminated. In addition, Plaintiff states she never received a copy of the memorandum directive instructing aides not to communicate at all with clients or their family members after being removed from a client's home. *Id.*

Plaintiff also complains that, although NGHC permitted her to return to work after the two-day suspension, NGHC took away her client A.K. "as another form of punishment." Pl.'s Mem. 2; *see also* Compl. 3 (claiming A. Belissary removed a client not related to C.P. or his sister "as another form of retaliation against [her] for filing a sexual harassment complaint and police report"). Rather, NGHC explains that it removed Plaintiff from working for client A.K. after A.K.'s daughter contacted NGHC and asked that Plaintiff be removed. *Id.* ¶ 9; EEOC Interview Notes, ECF No. 51-13. Plaintiff submits that there are no "signed or notarized statements" from A.K.'s daughter proving she requested Plaintiff's removal from the home of her mother, A.K. *Id.* Plaintiff suggests the document provided (presumably the EEOC Interview Notes, ECF No. 51-13) "could have been typed by anybody." Pl.'s Mem. 2. In her deposition, Plaintiff testified that she did not "believe" A.K.'s daughter had requested Plaintiff's

removal and that she did not believe the documentation because it contained no signatures. Pl.'s Dep. 102-04, ECF No. 51-21.[8]

These arguments by Plaintiff miss the point. Plaintiff is required to demonstrate that her participation in "protected activity" was the "but-for" cause of any adverse employment action. *Nassar*, 133 S. Ct. at 2533. In seeking summary judgment, Defendants have set forth specific reasons unrelated to Plaintiff's filing any reports. Plaintiff's hours were reduced because she requested removal from some clients' homes. Plaintiff had no promise of a specific number of work hours. Plaintiff's suspension was based not on her reporting to the Sheriff's Office, but on her threatening telephone calls to C.P.'s family members.

As the court explained to Plaintiff in its May 2, 2013 Order concerning Plaintiff's response to Defendants' Motion (known as a "*Roseboro* Order"), Plaintiff was required to support her version of the facts with documents and other material as set forth in Federal Rule of Civil Procedure 56(c). ECF No. 52 at 2. Calling Defendants' proffered reasons and evidence into question by speculating that "there should be recordings" or arguing a document is false will not suffice to defeat summary judgment. The burden of establishing a prima facie retaliation claim is on Plaintiff. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (noting employee-plaintiff's burden of establishing prima facie retaliation claim). Plaintiff has not satisfied her burden.

In addition, even if it were found that Plaintiff established a prima facie case, the same reasons Defendants have presented to demonstrate the lack of a but-for causal link between any reporting and adverse employment actions—including Plaintiff's requests to be removed from certain clients' homes and her contacting and threatening a former client's family member—also establish "legitimate, non-

---

[8] Defense counsel explains the interview note was obtained from the EEOC pursuant to a request made pursuant to the Freedom of Information Act ("FOIA"). Defs.' Mem. 7; EEOC's Resp. to FOIA Req., ECF No. 51-13 at 3-5.

retaliatory" reasons for such actions. *See Navy Fed. Credit Union*, 424 F.3d at 405. Plaintiff has not presented competent evidence to overcome these legitimate, non-discriminatory reasons for NGHC's actions. Plaintiff's generalized personal beliefs and unsupported assertions are insufficient to carry her burden at the pretext stage. *See Reeves*, 530 U.S. at 147 (noting "it is not enough . . . to *dis*believe the employer[.]" (internal citation and quotation omitted)). Plaintiff's claim of retaliation in violation of Title VII as related to the C.P. matter should be dismissed as a matter of law.

b) Client G.G.

Plaintiff also alleges NGHC terminated her in retaliation for making an internal complaint about client G.G.'s son. *See* Compl. 3, ECF No. 1. Plaintiff avers that, on January 26, 2010, the son of G.G. held her in a bedroom against her will and tried to kiss and touch her. She states the daughter of G.G. intervened. Plaintiff states she filed a complaint with NGHC that same day and "was fired by [Defendant] Lynn Ford after [Ford's] constant attempts to get [Plaintiff] to go back." *Id.* Plaintiff avers she was terminated for refusing to go back to work in the home of G.G., which she characterizes as a "harmful and hostile environment." *Id.* at 4. *See also* Pl.'s Br. 2-3, ECF No. 57.

Defendants move for summary judgment, arguing Plaintiff did not exhaust administrative remedies as to this portion of her Complaint because her Plaintiff's Charge of Discrimination filed with the EEOC in November 2009 does not reference the January 26, 2010, removal request or alleged termination. Defs.' Mem. 15, ECF No. 51; *see* Charge of Discrimination, ECF No. 51-15. Plaintiff does not deny that her EEOC charge does not include information about the January 26, 2010 incident or her claimed termination/retaliation in connection with the incident. Rather, Plaintiff submits that the reason she did not submit a second claim or amend the one she had filed earlier was because her assigned EEOC investigator, Andrew Davis, did not issue her a "second charge form or amendment form and informed [her] that a second charge form did not need to be filed for the charge was with the same

agency." Pl.'s Mem. 4. Plaintiff continues, noting she "does not have control over the actions of others and was never offer[ed] any chance to file a second charge or amend the first one." *Id*. She also notes that this case is not "simple" and "has dragged on and on for years[.]" *Id.*

The scope of her Charge of Discrimination "defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Claims that are "reasonably related to [a claimant's] EEOC charge" and "can be expected to follow from a reasonable administrative investigation" may be advanced in the claimant's subsequent civil suit. *Id.* at 247-48 (citing *Chisolm v. U.S. Postal Serv*., 665 F.2d 482, 491 (4th Cir. 1981)).

Defendants are correct that Plaintiff did not amend her EEOC charge to expressly include claims of retaliation based on her January 2010 complaint about G.G.'s son and following activities.  However, "the scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such charge during the pendency of the case before the [EEOC].'" *Hill v. W. Elec. Co., Inc.,* 672 F.2d 381, 390 n.6 (4th Cir. 1982) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). In January 2009, Plaintiff's charge was pending with the EEOC. Interview notes submitted from the EEOC file by Defendants reference a witness interview that took place on January 12, 2010. *See* ECF No. 51-13. The EEOC issued Plaintiff a right-to-sue letter in June 2012. ECF No. 1-1.  Based on the language of *Hill*, the undersigned is of the opinion that Plaintiff sufficiently exhausted administrative remedies for consideration in this court.

Nonetheless, the undersigned agrees with Defendants that Plaintiff's second retaliation claim fails as a matter of law. On January 26, 2010, Plaintiff requested removal from the home of G.G. Handwritten Removal Request, ECF No. 51-16. Nothing in Plaintiff's handwritten request to be removed from working at the home of G.G. references complaints about any type of behavior that could be violative of Title VII. Rather, Plaintiff asked to be removed "right now today," explaining she was

"terrified and scared" of G.G.'s son, who had walked into a bedroom where Plaintiff was and shut the door. *Id.* Nothing in Plaintiff's written request logically could be considered by her employer to be "opposing discriminatory conduct." *Burgess v. Bowen*, 466 F. App'x at 282. Plaintiff has not set forth sufficient evidence of a "protected activity."

Plaintiff also includes a report she made to the Florence County Sheriff's Office on February 1, 2010, regarding a claimed "kidnapping" by G.G.'s son. Sheriff's Office Rpt., ECF No. 57-1 at 5. Such a report is not "protected activity" for purposes of a Title VII retaliation claim. Even if it were, Plaintiff has provided no evidence that Defendants were even aware she made that report, nor do Defendants reference that report in their Motion and Memorandum. *See Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding plaintiff had not established a prima facie retaliation case because he had not shown that relevant officials of his employer were aware of his participation in protected activity at the time the claimed retaliation took place). Accordingly, Plaintiff cannot satisfy the first prong of establishing a prima facie retaliation claim related to the G.G. removal request. Defendants' Motion for Summary Judgment should be granted.

Even assuming for argument's sake that the January 2010 request were to be considered protected activity, and assuming without deciding that Plaintiff suffered the "adverse action" of not being assigned to other clients after her request to be removed from caring for G.G. was honored, Plaintiff cannot establish a prima facie retaliation claim because she cannot demonstrate her report about G.G.'s son was the "but-for" cause of any retaliatory actions. As an initial matter, G.G. was Plaintiff's sole client at the time she requested that she be removed from that assignment. A. Belissary Aff. ¶¶ 13-14. NGHC had no other clients to assign to Plaintiff at that time. *Id.* ¶ 14.

Plaintiff submits NGHC could have placed her as a worker in an adult day care it owned, but refused to do so. She indicates she has "never received a phone call to this day from NGHC offering any

forms of employment with them." *Id.* However, the undisputed evidence before the court is that NGHC did not guarantee employment or a specific number of work hours to Plaintiff or to any employee. *Id.* ¶ 4; Terms of Employment, ECF No. 51-4. Far from showing any action by NGHC was the "but-for" cause of Plaintiff no longer having work with NGHC, Plaintiff has, if anything, shown that her own January 2010 request for removal was the "but-for" cause of that situation. Plaintiff's claim of retaliation related to the January 2010 report concerning G.G.'s son fails as a matter of law.

To the extent it were found that Plaintiff has established a prima facie case related to the January 2010 request, these same reasons establish "legitimate, non-retaliatory" reasons for such actions. *See Navy Fed. Credit Union*, 424 F.3d at 405. Plaintiff has not presented competent evidence to overcome these legitimate, non-discriminatory reason for NGHC's actions. Plaintiff generally argues she was "fired for refusing to go back to a hostile and dangerous working environment [G.G.'s home.]." Pl.'s Mem. 3. She states Defendants have refused to place her at an adult day care center that Defendants own. *Id.*

Plaintiff's generalized personal beliefs and unsupported assertions are insufficient to carry her burden at the pretext stage. *See Reeves*, 530 U.S. at 147 (noting "it is not enough . . . to *dis*believe the employer[.]" (internal citation and quotation omitted)). Plaintiff's claim of retaliation in violation of Title VII as related to the G.G. matter should be dismissed as a matter of law.

### 2. Title VII Individual Liability

Defendants also seek summary judgment as to the named individual Defendants: John Belissary; Ann Belissary; and Lynn Ford. Defs.' Mem. 16-17. The undersigned agrees that summary judgment is appropriate as to each of these Defendants as Title VII does not give rise to individual supervisory liability. *Lissau v. S. Foodservice*, 159 F.3d 177, 180-81 (4th Cir. 1998) (concluding that Title VII forecloses individual liability). As the Fourth Circuit Court of Appeals noted, "[n]owhere does the [Civil

Rights Act] mention individual liability as an available remedy. Had Congress felt that individual liability was 'needed to deter unlawful harassment and intentional discrimination,' surely it would have included this remedy in the 1991 Amendments." *Id.* at 181.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment, ECF No. 51, be granted and this case be dismissed.

IT IS SO RECOMMENDED.

November 13, 2013                                       Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**